## Samuel L. Riddle, Appt., v. John Berg & Company.

The lien obtained by a creditor who enters a judgment against a vendor, after a contract of sale of land has been made, is analogous to the lien obtained by foreign attachment, or attachment in execution. In the first case the judgment creditor acquires and holds all the rights of the vendor to compel payment of and receive unpaid purchase money. In the last case the attachment creditor acquires and holds all rights of his debtor to compel payment of and receive the debt due to him. In both cases the creditor steps into his debtor's place and takes all his rights to collect his debt.

Where the vendor, on December 15, 1876, by a written contract agreed "to sell and by deed in fee, on or before the first day of April next, if purchase money be then paid in full, convey" to the vendee certain land, and by the

NOTE.—A judgment entered against a vendor after an agreement to sell land has been made cannot affect the interest of the vendee, but the creditor has the right to unpaid purchase money. Stewart v. Coder, 11 Pa. 90; Kinports v. Boynton, 120 Pa. 306, 6 Am. St. Rep. 706, 14 Atl. 135; M'Mullen v. Wenner, 16 Serg. & R. 18, 16 Am. Dec. 543. But this rule is not applicable to a parol sale, since it must be executed to become effective. Day v. Willy, 3 Brewst. (Pa.) 43. If the purchase money has all been paid, no interest is bound. Foster v. Foust, 2 Serg. & R. 11; Meade v. Clarke, 159 Pa. 159, 23 L. R. A. 479, 39 Am. St. Rep. 669, 28 Atl. 214.

See also editorial note to Bowen v. Lansing, 57 L. R. A. 643, presenting the authorities as to the nature of the vendor's and vendee's interests in a land contract, including the subjection of such interests to the lien of a judgment.

same contract the vendee agreed "to pay the sum of $15,000, in the following manner: $10,000 in hand, and $5,000 on or about the first day of April next, and for which a note of hand is to be given," and at the same time the vendee gave his check for $10,000, and his promissory note for $5,000, payable to the order of the vendor, due April 1, 1877, and a receipt was written on the contract for a check for $10,000, and for a note for $5,000, "when paid, in full of the consideration hereof;" and on January 30, 1877, judgment was entered against the vendor for $15,000, and on ebruary 3, 1877, the deed for the land was delivered to the vendee, and on February 21, 1877, the note was indorsed, and transferred to a bank for value, it not appearing that the bank had any notice or knowledge respecting the consideration of the note, or that the maker had any defense against a payment of it, and the note was paid at the time of its maturity, the maker having no actual knowledge or notice that the judgment had been entered against his vendor, it was,—*Held,* that the vendee upon payment of the note held the land free of any lien of the judgment.

After the entry of the judgment an injunction might have been obtained to prevent the vendor from negotiating the note he then held; but it was the business of the plaintiffs in the judgment to apply for it, and if they neglected to secure themselves, and protect the innocent maker of the note, they, and not the maker, must bear the loss, their judgment being a lien, not on what land, or interest in realty, they supposed the vendor had, at the time of its entry, but only on what he in fact had.

It is not the duty of a purchaser of land, who has given a negotiable note in payment of the balance due on the purchase money, to watch the record and, when a judgment is entered, inform the judgment plaintiff of the existence of the note, and the possibility of its being negotiated.

(Argued October 18, 1886. Decided November 1, 1886.)

October Term, 1886, No. 204, W. D., before GORDON, TRUNKEY, STERRETT, and GREEN, JJ. Appeal from a decree of the Common Pleas of Butler County distributing funds arising from a sheriff's sale of real property. Affirmed.

The facts are stated in the following opinion of the court below, by McMICHAEL, J.:

The exceptions to the auditor's report in this case, which are important to be considered, are to his conclusions of law. The important facts which he finds, and upon which he bases his conclusions, do not appear to be now seriously controverted, and no exceptions have been taken to his findings of fact, which it will be necessary to examine.

The principal controversy is whether the judgment of Allen Wilson, Daniel Fiedler, Josiah M. Thompson, Solomon R.

Thompson, and John C. Martin, now for use of Samuel L. Riddle, against John M. Thompson, entered on January 30, 1877, is entitled to participate in this distribution.

The land, the sale of which produced the fund for distribution, was sold as the property of Bernard Dougherty; but it is claimed this judgment is entitled to have distributed to it $5,000 with accrued interest thereon, from the proceeds of the sale, because the land was sold by John M. Thompson, the defendant in this judgment, to Bernard Dougherty, by articles of agreement dated December 15, 1876, for $15,000, payable as follows: $10,000 in hand, and $5,000 on or before the first day of April, 1877, and this judgment was entered against John M. Thompson, while he still retained the legal title, and before the said $5,-000 was paid, and thereby became a lien on the land to the extent of John M. Thompson's interest therein at the time it was entered, that is, to the extent of said $5,000 unpaid purchase money.

To this three answers are made. One answer is that by the terms of the contract, the purchaser, Bernard Dougherty, was to give his note of hand for the deferred payment of $5,000; that he did in fact give his negotiable promissory note for that payment, which was negotiated by John M. Thompson shortly after the entry of said judgment, to a holder, for value and without any notice of any defense against its payment, and that it was paid by Bernard Dougherty at its maturity, and that therefore John M. Thompson did not have, at the time said judgment was entered, any estate or interest in the land on which the judgment could become a lien, or if it were a lien, that lien was subsequently devested and lost by the negotiation of the note and the payment of it by Dougherty .

Another answer is that John M. Thompson was not in fact the owner of the land at the time it was sold to Dougherty; that it was then the property of Mr. Thompson's wife, and that therefore he did not have any estate or interest in it at the time the judgment was entered, upon which the judgment could or did become a lien.

A third answer is that Samuel L. Riddle, the present owner of said judgment, extended the time for its payment and thereby, under the circumstances, released the land of Bernard Dougherty from all liability for its payment.

The learned auditor in a lengthy and very carefully consid-

ered report, concludes that the first and third of the above-mentioned answers are not sufficient in law, and that the second is not true in fact, and distributes to the said judgment the sum of $5,000 with the interest accrued thereon from April 1, 1877, to September 6, 1884, the day of the acknowledgment of the sheriff's deed for the land. To all these conclusions exceptions have been filed.

The facts relating to the first of the above answers are not disputed. They are specifically as follows: On December 15, 1876, John M. Thompson, by a written contract, agreed "to sell and by deed in fee, on or before the first day of April (then) next, if purchase money be then paid in full, convey to said B. Dougherty" the land from the sale of which, by the sheriff, the fund for distribution came. By the same contract Dougherty agreed, "to pay the sum of $15,000 in the following manner: $10,000 in hand, and $5,000 on or before the first day of April (then) next, for which note of hand is to be given." At the same time Dougherty gave to Thompson his check for $10,000, and his promissory note for $5,000 payable to the order of John M. Thompson and due April 1 and 4, 1877; and a receipt was written on the contract and signed by John M. Thompson, as follows:

"$15,000. Received of B. Dougherty his check for $10,000; also note for $5,000, when paid, in full of the consideration hereof.                    John M. Thompson."

On January 30, 1877, the before-mentioned judgment of Allen Wilson, Daniel Fiedler, and others, against John M. Thompson was entered for $15,000, and on February 3, 1877, the deed of Mr. Thompson and his wife for the land described in the contract was delivered to Bernard Dougherty. Mr. Thompson continued to hold the note given him by Mr. Dougherty, until February 21, 1877, on which day he indorsed it and transferred it to the First National Bank of Pittsburgh, the bank paying him therefor in cash on the same day, $4,958.19. It does not appear that the bank, when it took this note, had any notice or knowledge respecting the consideration which Mr. Dougherty had received for the note, or that he had, or could have any defense against the payment of it. Mr. Dougherty paid this note to the bank, without contest, at or shortly before the time for its matur-

ity.   At the time he paid this note Mr. Dougherty had no actual knowledge or notice that the said judgment had been entered against Mr. Thompson.

Our present question is (admitting for the present that John M. Thompson had title to and was the owner of the land at the time of the sale to Mr. Dougherty) :   Did this judgment when it was entered become a lien on the land sold, to the extent of $5,000; and should there now be distributed to this judgment that sum with the interest accrued thereon from April 1, 1877, the time it became due, to the time of the sheriff's sale?

It may be conceded at the outset that the note was not received in payment of the $5,000 of purchase money.   The language of the receipt on the contract is sufficiently definite to show that both the check and the note were to be payment only "when paid."   It follows that Mr. Thompson held the land as security for the payment of the note, or for the payment of the $5,000 unpaid purchase money.   Had the note not been paid by the maker, he could have enforced payment by equitable ejectment. If the note were paid at maturity, he had no further right to hold the land, but was bound by his contract to convey it to the purchaser.   It becomes important to ascertain and determine definitely just what estate and interest Mr. Thompson had in this land after he had made the contract to sell it, for that is the estate and interest on which his judgment creditors acquired a lien by the entry of their judgment.   A lien means the right to hold or retain the property or estate of another until the debt or claim for which it is held is paid or satisfied.   When the creditors of John M. Thompson entered their judgment they held by their lien just the estate and interest he then had in this land. He then held the legal title in trust to convey it to the purchaser, upon the purchaser performing his part of the contract.   And in this case the part of the contract to be performed by the purchaser was not to pay to Mr. Thompson the $5,000 of unpaid purchase money, but to pay that promissory note to whoever might be the legal holder of it when it became due.   When Mr. Dougherty would pay that note, then Mr. Thompson would hold no contract obligations on him and would be bound to give him the legal title.   If he should not pay the note, Mr. Thompson had the right to use his legal title to the land to compel the payment, not of the note, but of unpaid purchase money.   These were the estate and interest in this land which Mr. Thompson

had when the judgment was entered. It became a lien upon them and upon nothing more, because Mr. Thompson then had nothing more that it could grasp or hold.

At that time Mr. Thompson still held the note, and things were in much the same condition they would have been in had Mr. Thompson before that time made a deed to Mr. Dougherty for the land and taken from him and entered a judgment bond for the unpaid purchase money. Had this been the case then the judgment creditor of Thompson could only have secured the money by attachment. The difference between the real and the supposed case is that in the real, the title not having passed, the lien of the judgment grasped Thompson's interest, and served the same purpose that the attachment would have served in the supposed case, had the money continued to be payable to Thompson. When, however, Mr. Thompson negotiated the note the condition of things materially changed. Then Mr. Dougherty was bound to pay it to the holder. The existence of the judgment against his vendor was then no defense against the note.

Up to this time Mr. Dougherty had not done any illegal or even careless thing in connection with this transaction. It surely cannot be carelessness in a purchaser of land, when he sees and knows that the title is clear of encumbrances, to make a contract for the purchase and give his promissory note for part of the price. Yet if a subsequent judgment creditor of his vendor can compel him to pay that price a second time, then he must have done a careless or illegal thing somewhere. There is something wrong in one or the other of these opposing propositions.

The lien obtained by a creditor who enters a judgment against a vendor after a contract of sale has been made is very analogous to the lien obtained by foreign attachment or attachment in execution. In the first case the judgment creditor acquires and holds all the rights of the vendor to compel payment of and receive the unpaid purchase money. In the last case the attaching creditor acquires and holds all the rights of his debtor to compel payment of and receive the debt due to him. In both cases the creditor steps into his debtor's place and takes all his rights to collect his debt. If, in the case in hand, the land sold by Mr. Thompson to Mr. Dougherty had not been in Butler county, so that the judgment now held by Mr. Riddle could not have become a lien on it, and Mr. Riddle had issued on said judgment an execution attachment which had been served on the defend-

ant and on Mr. Dougherty on January 30, 1877, he would thereby have acquired all the rights which he did acquire by the entry of the judgment; he would have acquired all the rights which Thompson then had to receive the unpaid purchase money and all the rights he had to compel payment. But if such attachment had been issued, Mr. Dougherty would not, under the facts of this case, be compelled to pay this purchase money to Mr. Riddle.

In Kieffer v. Ehler, 18 Pa. 388, it was decided that where a garnishee in an attachment execution was indebted to the defendant on a promissory note, which the defendant negotiated after service of the attachment but before the maturity of the note, no judgment could be had against such garnishee. The same principle is recognized and confirmed in Hill v. Kroft, 29 Pa. 186, and Day v. Zimmerman, 68 Pa. 72, 8 Am. Rep. 157.

It is difficult to see why the principle on which these cases rest should not control the question in hand.

In the case of Kieffer v. Ehler it is further said that the negotiation of such paper by the payee after he has notice of the attachment is a fraud upon the law, and that the court from which the attachment issues has power to prevent this by requiring the instrument to be placed in such custody as will prevent it from being misapplied.

So here, after the entry of the judgment an injunction might have been obtained to prevent Mr. Thompson from negotiating the note he then held. But if such injunction were needed, it was the business of the plaintiffs in the judgment to apply for it. It was they who were desirous to make themselves secure and it was their duty to do everything necessary so that innocent parties should not suffer. If they neglected any duty, they, and not innocent parties, must bear the loss. If it be said they did not know of the existence of this note, the answer is, the contract and receipt thereon showed its existence. If they did not know of the contract, that fact can make no difference, as this judgment became a lien, not on what lands or interest in realty they thought or supposed Mr. Thompson had at the time of its entry, but only on what he in fact had. In other words, their lien was subject to the rights of Mr. Dougherty under his contract. He did not owe them the duty to watch the record and when their judgment was entered inform them of the existence of the note and the possibility of its being negotiated. Had they inquired

òf him and he had not told them the truth, the case might be different. It is nowhere shown that Mr. Dougherty did not act in good faith and honestly throughout the transaction. Hence he should not, nor should his creditors who claim under him, be made to suffer for no fault or laches of his or theirs.

It follows from this that the learned auditor erred in distributing $5,000 and interest thereon to the judgment before mentioned and now held for the use of Samuel L. Riddle; and exceptions eight, nine, and thirteen, filed on behalf of John Berg & Company, are sustained.

It is necessary to examine the questions raised by the other exceptions to the distribution to this judgment.

The able argument of the auditor, as well as that of the counsel, seems convincing that the title to the land was really in John M. Thompson at the time he made the contract to sell it to Mr. Dougherty. This question appears to have been the absorbing one at the audit, and no very careful attention was given to any other.

The question respecting Samuel L. Riddle, the use plaintiff, having granted time to the defendant and thereby released the land as a surety may also be passed.

The auditor's conclusions respecting the mechanics' liens of Graham & Wilson for the use of Samuel L. Riddle, and J. C. Redick & Company for the same use, appear to be well founded. The respective exceptions to his report in these particulars were not pressed on the argument. I do not have the record or papers relating to either of these liens before me, and have never seen them; but if the facts respecting them as found by the auditor are correct (and these findings of facts are not excepted to), the authorities he cites fully sustain his conclusions.

The item of $25 allowed to the prothonotary for recording the report is excepted to as excessive. The prothonotary is entitled to one cent for every ten words, and his legal fees can readily be ascertained by counting a few specimen pages of the report. I have counted some of them and find their average to be near 150 words per page. This rate would make the fees $15. As the report must go back to the auditor this item can be corrected in his amended report.

It was stated at the time of the argument that some proceedings had been had to fix the boundaries of the curtilage over which the mechanics' liens against the building should extend,

or the value of the building with the curtilage, and I find that some evidence on that subject was offered and objected to. The auditor does not report anything on this matter. As the money was all payable to Samuel L. Riddle, in the report he made it was not necessary to determine anything on this subject. Since under this opinion part of the fund in court must be distributed to the mortgage to Andrew C. Gibson or the judgment obtained thereon and now owned by John Berg & Company, the lien of which is subsequent to the mechanics' liens, it will be necessary to have the value of the property covered by the mechanics' liens determined, and confine these liens to that fund, to be ratably divided among them; or at least it may be necessary to have said value so determined. The report of the auditor is referred back to him, with authority to him to notify the parties interested or their respective attorneys when he will hear them; to take such further testimony, or hear and receive such further evidence as may be necessary, and report distribution of the fund in court in accordance with this opinion.

On the hearing of exceptions to the supplemental report of the auditor, the court delivered the following opinion:

"There are several things in this case which tend to show that the attorneys of Samuel L. Riddle neglected to carefully look after and present the evidence which they could have obtained to establish the validity of the lien of Graham & Wilson when the matter was first before the auditor, because they believed they had other valid claims which would exhaust the fund; and that they, for the same reason, permitted the report to be filed and its correctness to be passed upon by the court without asking for the privilege of producing the evidence, which they could have obtained at any time. They rested their case on the validity of the judgment against John M. Thompson, Esq.; and not until after the court had decided that the money should not be distributed to that judgment did they ask to be permitted to produce the evidence to sustain the lien of Graham & Wilson. Failing in one claim they ask to be heard on another. Such a practice should not be encouraged. But the circumstances of this case are peculiar, and I have concluded that the learned auditor did right in deciding that distribution should yet be made to this lien. It is not necessary to state at length all the reasons which lead me to this conclusion. The principal ones are these:

that the neglect may have been at first an oversight, and after attention was called to it, no steps were taken because, at the time, they were believed to be unnecessary. Then again, no one has been injured or delayed by this apparent neglect. Mr. Berg is in no worse position than he would have been in had this claim been properly proved when first presented. Other matters, and not this neglect, have delayed the final disposition of the case.

"Further, upon a full examination of the case, there appears to have been before the auditor during his former hearing, sufficient evidence to have supported this lien. The mechanics' liens filed by Graham & Wilson and by J. C. Redick & Company were both offered in evidence before the auditor on November 17, 1884, as appears by his minutes. On January 8, 1885, B. Dougherty testified before the auditor, among other things, as follows: 'Graham & Wilson had the contract for the painting. They sublet it to some one else. J. C. Redick & Company furnished some of the paints, etc., that were used in the building. . . . Pressly Gill was the subcontractor of Graham & Wilson for doing the painting and glazing. . . . The contract price of the Graham & Wilson contract included painting, glazing and materials, paints, oils, etc., furnished to the building. There was a balance of $100 of Redick's bill that was not paid by the painter which I was to pay, and Graham & Wilson also had a claim on me for this item of $100 by their contract.'

"The papers of these liens were not handed to the court when the former exceptions were argued, and I have never seen them till now, but let us examine them in the light of the oral testimony just quoted. The claim of Graham & Wilson has this item: 'To contract price for carpenter work, painting, glazing, slating, etc., as per written agreement dated April 14, 1877, $5,450.'

"The oral testimony shows that that item included the materials for the painting and glazing; that J. C. Redick & Company furnished part of these materials, and that the lien filed by them was for the materials they had so furnished. The itemized copy of the claim of J. C. Redick & Company was in evidence. Its correctness was not then, and is still not, disputed. It shows materials for painting, glazing, etc., furnished from November 19, 1877, to November 22, 1878. Thus it is proven that the materials necessary to complete the contract of Graham & Wilson were not all furnished before November 22, 1878. Their

contract could not be completed before the necessary materials were furnished, and hence was not completed until after November 22, 1878. Their lien was filed on May 9, 1879, within six months after the time the last materials were furnished for their contract, and therefore necessarily within six months after they had finished the work under their contract.

"Add to these reasons the fact that this claim of Graham & Wilson is a meritorious claim, and should therefore be regarded with favor, and the reasons are sufficiently strong to make it the duty of the court to permit the proof of this claim, if any such proof were necessary, to be supplied out of the regular order.

"The exceptions to the decision of the auditor, that this claim is entitled to participate in the distribution, must therefore be dismissed.

"The exceptions to the allowance of the claim of J. C. Redick & Company are yet to be considered. From what has already been said, it appears that this claim is for materials which Graham & Wilson were to furnish under their contract, and that the price of these materials is included in the first item—the 'contract price'—in the claim of Graham & Wilson. I say it so appears from all the evidence which was produced on the subject. If that be correct, then to pay the claim of Graham & Wilson, and also to pay this claim, would be to pay the amount of this claim twice. If it is not correct that the price of these materials is included in the claim of Graham & Wilson, or if it be allowed for in any of the credits which are given on that claim, then it was the duty of the claimant to show the facts. The burden of proof was on him to show that both these claims should be paid in full. The evidence which he introduced shows prima facie that the one is included in the other. He in no way explains or rebuts this prima facie case. The attorney for John Berg & Company explicitly called attention to this matter, but he was not answered in any way. He put his objections in his exceptions to the report of the auditor, but the learned auditor overruled the exceptions without giving any reasons for doing so, without stating any facts which would relieve the case of the error which, as the evidence stands, appears so obvious. Nowhere in the case is there anything which relieves these claims from the objection that the amount of the one is included in the other, and until that objection is removed they cannot both be rightfully paid.

"If the evidence showed that the materials were obtained from J. C. Redick & Company, by the contractors, Graham & Wilson, then it would be proper to pay the claim of J. C. Redick & Company, and deduct the amount of it from the claim of Graham & Wilson. But the evidence does not so show. The claim of J. C. Redick & Company shows on its face that the materials were obtained by Pressly Gill as contractor; and the evidence offered on behalf of Mr. Riddle, the present owner of these claims, shows that Gill was not a contractor, but at most a subcontractor, if he was more than a mere employee to do the painting and glazing. It not only does not appear that Gill had authority to bind the building by his contract for materials, but it does affirmatively appear that he had no such authority. The claim of J. C. Redick & Company as it stands is therefore fatally defective as a lien. Whether it could have been amended so as to entitle it to distribution as against other lien creditors, need not be considered. No application to so amend has been made. Were such amendment made the money paid on this lien would have to be taken from the claim of Graham & Wilson, and the result in this case would be substantially unchanged.

"That a judgment recovered against B. Dougherty on this claim did not make it good as against other lien creditors is expressly decided in McCay's Appeal, 37 Pa. 125.

"For these reasons the exceptions relating to the distribution made to this claim of J. C. Redick & Company must be sustained.

"I have not overlooked the fact that the learned auditor in his first report decided that this lien was valid, and that the exception to his decision was not sustained. The papers were not then produced to the court for examination, and the facts were not fully brought to my attention. The contest then was over another matter. Besides, if that decision was erroneous, as it now appears to have been, it is not too late yet before final decree to correct it.

"The distribution made by the auditor in the schedule No. 1, in his supplemental report, is now corrected by striking therefrom the distribution made to the mechanics' lien of J. C. Redick & Company for use of Samuel L. Riddle against B. Dougherty, of debt, interest, and costs, amounting to $142.92, and by adding the sum of $142.92 to the amount distributed to the mortgage of A. C. Wilson, for use of John Berg & Company,

against B. Dougherty, making the whole sum to be paid to said mortgage creditor $5,376.11 instead of $5,233.19, as stated in said schedule. With these corrections made in said schedule No. 1, the said report and schedule of distribution are confirmed."

A decree was entered accordingly, and Samuel L. Riddle appealed, assigning as errors the action of the court: 1. In overruling the auditor's report, which appropriated $5,000 and interest of the fund in court to the judgment of Daniel Fiedler and others for the use of Samuel L. Riddle against John M. Thompson, and appropriating the same to the mortgage and judgment thereon of Gibson for use of John Berg & Company against B. Dougherty, entered long after the Fiedler judgment on the land sold. 2. In not appropriating the $5,000 and interest of the fund in court to the Fiedler judgment, for use of Samuel L. Riddle. 3. In appropriating any part of the fund in court to the Gibson mortgage and judgment for use of John Berg & Company. 4. The court should have appointed enough of the fund in court to pay the $5,000 and interest of the judgment of Fiedler for the use of Samuel L. Riddle against John M. Thompson, being the amount of unpaid purchase money from Dougherty to Thompson at the time the Fiedler judgment was entered against Thompson.

*Charles McCandless* and *W. H. H. Riddle,* for appellant.— It is a doctrine often reiterated that every estate in land is bound by the lien of a judgment, whether the owner be seised or disseised. 1 Trickett, Liens, § 187; Mitchell v. Hamilton, 8 Pa. 486; *Re* Vandevender, 2 Browne (Pa.) 304; Sellers v. Burk, 47 Pa. 344; Davis v. Ehrman, 20 Pa. 256; Ex parte Peneveyre, 6 Watts & S. 446; Hoffman's Estate, 2 Pearson (Pa.) 317; Shaupe v. Shaupe, 12 Serg. & R. 9; Thomas v. Simpson, 3 Pa. 60; Beard v. Deitz, 1 Watts, 309; Lancaster County Bank v. Stauffer, 10 Pa. 398.

A judgment against a vendor by articles of agreement, who retains the legal title is a lien thereon, to the extent of the unpaid purchase money. The vendor holds the legal title as security for the payment of the purchase money, and a judgment recovered against him after the rise of the equitable title of the vendee will attach to the land, to the extent of the money unpaid on

the contract of the vendor.   1 Trickett, Liens, § 189; M'Mullen v. Wenner, 16 Serg. & R. 18, 16 Am. Dec. 543; Fasholt v. Reed, 16 Serg. & R. 266; Catlin v. Robinson, 2 Watts, 373; Stewart v. Coder, 11 Pa. 90; Taylor v. Preston, 79 Pa. 436; Geades's Appeal, 84 Pa. 482.

There are few liens which at law exist in relation to real estate. The most striking of this sort of lien undoubtedly is the lien of a judgment creditor upon the lands of his debtor. But this is not a specific lien on any particular land; but it is a general lien over all the real estate of the debtor, to be enforced by an *elegit* or other legal process upon such part of the real estate of the debtor as the creditor may elect.   2 Story, Eq. Jur. 10th ed. § 1216, p. 462.

The entry of our Fiedler judgment gave us a lien on the land, to the extent of the unpaid purchase money; and this right or lien vested in us instantly the right to possess and retain this land until this purchase money was paid us by the defendant or terretenant, Dougherty.

How can this statutory lien (which by law stands good without any action on the part of the plaintiff for five years, and after that as long as he chooses to act and revive it every five years against the defendant and terretenants) be satisfied or extinguished? The answer is, The defendant or terretenant must show that the judgment has been satisfied or paid since it was entered, or if the defense is before the rendition of the judgment, apply to court and open it and defend.   Cardesa v. Humes, 5 Serg. & R. 67.

A terretenant, although he has paid his purchase money in full, cannot object to the revival of a judgment because it was entered without authority or by one not a representative of the defendant in the original judgment revived by sci. fa.; his only defenses are subsequent satisfaction or the plea of *nul tiel record*, and that will fail if a judgment in form is produced.   Davidson v. Thornton, 7 Pa. 128.

. The only defense of a terretenant to a judgment against his land is subsequent satisfaction or the plea of *"nul tiel record,"* and that will fail if a judgment in form is produced.   Cardesa v. Humes, 5 Serg. & R. 65; Lewis v. Smith, 2 Serg. & R. 142; Parmentier v. Gillespie, 9 Pa. 86.

The holder of the note, the bank, had no lien, and payment to the bank could not satisfy our lien or extinguish it.

On the sale of real property by articles, the taking and negotiating a bill or note by the vendor does not amount to a relinquishment of his lien on the land for the unpaid purchase money. Byles, Bills, p. 386, and authorities there cited; Seltzer v. Coleman, 32 Pa. 494.

The following review of English cases shows how far the vendor's lien has been recognized and sustained and is cited in Fish v. Howland, 1 Paige, 20.

The earliest case deciding the question of vendor's lien is in these words: That there was a natural equity that the land should stand charged with the unpaid purchase money without special agreement for that purpose. Chapman v. Tanner, 1 Vern. 267.

In the case of Coppin v. Coppin, 2 P. Wms. 291, we find a decision in favor of the vendor's lien, "notwithstanding a receipt for the purchase money was indorsed on the conveyance of the estate."

In Pollexfen v. Moore, 3 Atk. 272, Lord HARDWICKE charged the estate in the hands of an heir at law with the unpaid purchase money due the vendor.

In Burgess v. Wheate, 1 Eden, 211, the general principles of the vendor's equitable lien is recognized. Blackburn v. Gregson, 1 Bro. Ch. 423, supports the same principle.

The last English case deciding that the taking bond of the vendee for purchase money payable in the future was a discharge of the equitable lien of the vendor is that of Fawell v. Heelis, 2 Amb. 724, but it has frequently been overruled since.

In Blackburn v. Gregson, 1 Bro. Ch. 420, Lord LOUGHBOROUGH, expressed a very decided opinion in favor of the vendor's lien.

In Austen v. Halsey, 6 Ves. Jr. 475, when a legatee claimed to be substituted in place of a vendor, in regard to the equitable lien, Lord ELDON says: "I consider it clearly settled that the vendor has a lien for the purchase money while the estate is in the hands of the vendee: I except the case where upon the contract evidently the lien by implication was not intended to be reversed."

In Nairn v. Prowse, 6 Ves. Jr. 752, the master of the rolls declared it to be then settled that equity gives the vendor a lien for purchase money without any special agreement to that effect.

In Hughes v. Kearney, 1 Sch. & Lef. 132, a case where the

vendee gave his note for the unpaid purchase money, which was put into the hands of a third person as trustee until the encumbrances on the estate could be ascertained and paid off out of the same, and then the residue to be paid to the vendor, it was held that the balance of purchase money included in the note was a lien upon the lands, in the hands of the heir of the purchaser.

In Mackreth v. Symmons, 15 Ves. Jr. 329, where a bond had been given for the payment of purchase money, it was held that the equitable lien on the land existed as against a purchaser with notice. Lord ELDON refers to previous cases, with the decisions and *dicta* on this subject, as settling the general principles, and in discussing what discharges the lien opposes the decision in Nairn v. Prowse.

In Grant v. Mills, 2 Ves. & B. 306, it was decided that where the vendee drew bills on himself and partner, obtained acceptances of them payable at a future day, and delivered them to the vendor for purchase money, the equitable lien was not discharged, but the bills considered simply a form of payment and not a security.

In *Ex parte* Peake, 1 Madd. 346, it was decided that the vendee's receiving bills of exchange in payment did not discharge his lien upon the land.

In *Ex parte* Loaring, 2 Rose, 79, where the vendor had taken a negotiable note at four months from the purchaser and had the note discounted, it was held that the equitable lien was not waived, and in this case Lord ELDON says "that the negotiation of the note amounts to nothing."

In Saunders v. Leslie, 2 Ball & B. 514, it was decided that the acceptance by the vendor of the bond or note for purchase money payable in the future was no waiver of the lien.

Taking a bond or note for the purchase money will not affect the vendor's lien, and although this has been decided otherwise, it is now a settled point. 2 Sugden, Vendors & Purchasers, p. 385. See also Hearle v. Botelers, cited in Cary, 25; Tardiff v. Scrughan, cited in 1 Bro. Ch. 423; Harrison v. Southcote, 2 Ves. Sr. 389; *Ex parte* Latey, 2 Mont. & Ayr. 609, 16 Ves. Jr. 338–343; Gibbons v. Baddall, 2 Eq. Cas. Abr. 682, note B; Ex parte Peake, 1 Madd. 346; 4 Kent, Com. 11th ed. 153; Evans v. Goodlet, 1 Blackf. 246; Cox v. Fenwick, 3 Bibb, 183, 184, 185; Taylor v. Hunter, 5 Humph. 569; Baum v. Grigsby,

21 Cal. 172, 81 Am. Dec. 153; Clark v. Hunt, 3 J. J. Marsh. 553; Ross v. Whitson, 6 Yerg. 50; Pinchain v. Collard, 13 Tex. 335; Truebody v. Jacobson, 2 Cal. 269; Manly v. Slason, 21 Vt. 271, 52 Am. Dec. 60; Vandoren v. Todd, 3 N. J. Eq. 397; Tobey v. McAllister, 9 Wis. 463; Hoggatt v. Wade, 10 Smedes & M. 143; Garson v. Green, 1 Johns. Ch. 308; Fish v. Howland, 1 Paige, 20; Eskridge v. M'Clure, 2 Yerg. 84; Blackburn v. Gregson, 1 Cox, Ch. Cas. 90, 1 Bro. Ch. 420; 15 Ves. Jr. 336; 6 Ves. Jr. 752; Hughes v. Kearney, 1 Sch. & Lef. 132; Lynn v. Chaters, 2 Keen, 521; Teed v. Carruthers, 2 Younge & C. Ch. 40; Grant v. Mills, 2 Ves. & B. 306.

The acceptance of a collateral security is not a conclusive waiver of vendor's lien. 2 Story, Eq. Jur. § 1226.

It is not important that the note or bill has been negotiated. 2 Sugden, Vendors & Purchasers, p. 386; Ex parte Loaring, 2 Rose, 79; Mackreth v. Symmons, 15 Ves. Jr. 329.

A bill in equity to restrain the negotiation of the note given by Dougherty under such circumstances would serve no purpose, and would not lie. Negotiation of the note would neither "pay nor satisfy the judgment," and that is the only way (according to the definition of a lien as given by the court in this case) its hold could be destroyed or extinguished.

To support the analogy and prove its position the court below cited the cases of Kieffer v. Ehler, 18 Pa. 388; Hill v. Kroft, 29 Pa. 186; Day v. Zimmerman, 68 Pa. 72, 8 Am. Rep. 157.

In these cases the giving of the note was proper, usual, and necessary, but in the case in hand the giving of the negotiable note collateral to the vendor's lien was negligent, unusual, and foolish, and in nearly every instance will result in loss to the maker. The cases referred to are of execution attachment where negotiable notes are sought to be attached; and the rule is that if after the attachment is served on the garnishee the defendant negotiates the notes, the garnishee cannot be held on the attachment. There is no analogy whatever between the case in hand and these cases.

It is the incumbent duty of a vendee to search the office for judgments before payment of his money up to the time of the execution and delivery of his deed to him. And in this there is no hardship upon the vendee, as he has notice upon record, and can have no difficulty in defending himself if he used ordinary diligence; and if he does not make the search and knows the

facts, if any injury accrues, it is right that he who causes it should sustain the loss. M'Mullen v. Wenner, 16 Serg. & R. 18, 16 Am. Dec. 543.

*T. C. Campbell,* for appellees.—The court below finds that Thompson held the land as security for the payment of the note; in other words, that the note was taken as conditional payment, and no other meaning can be wrested from the contract or the receipt attached to it. This is the finding of fact by the court, and to it there is no exception or assignment of error. We then inquire, What was the legal standing of the parties under these circumstances ?

If the note was taken as conditional payment, and Thompson, without the aid or interference or knowledge of Dougherty, negotiated it before maturity, for value, and without notice of any defense to the indorsee, Dougherty was compelled to pay it to that indorsee, and having done so the lien of the judgment was *ipso facto* released from his land. Cumber v. Wane, 1 Smith Lead. Cas. *457; Byles, Bills, pp. 380, 381; Bayard v. Shunk, 1 Watts & S. 94, 37 Am. Dec. 441; Hays v. McClurg, 4 Watts, 452; Okie v. Spencer, 2 Whart. 253, 30 Am. Dec. 251; Brown v. Scott, 51 Pa. 362; Story, Promissory Notes, §§ 104, 404, 405; Hutchins v. Olcutt, 4 Vt. 549, 24 Am. Dec. 634.

The correctness of this position is evidenced best by the decisions of this court as to execution attachments cited by the court below, and the argument of the court below upon the application of them to this case.

It is held that an execution attachment issued and served upon the maker of a negotiable note as garnishee will not avail as against an indorsee of the note who purchases for value before maturity and without notice, although the negotiation was effected after the service of the attachment, and that the maker of the note, the negotiation being shown, has a complete defense to the attachment. Kieffer v. Ehler, 18 Pa. 388; Hill v. Kroft, 29 Pa. 186; Day v. Zimmerman, 68 Pa. 72, 8 Am. Rep. 157.

That a lien is but an incident, and not the object of a judgment, is practically and theoretically true. The creditor looks to personal security, and not to real, and when he does he takes a mortgage. Reed's Appeal, 13 Pa. 475.

Constructive notice only arises where the existing state of facts

calls for inquiry; there must be a duty to inquire. Hottenstein v. Lerch, 104 Pa. 454.

It was the duty of the plaintiff in the judgment to prevent the negotiation of the note, if he relied upon it for payment of his judgment. He knew from Dougherty's possession that he had a claim upon the land, while Dougherty knew nothing of his judgment, and an inquiry of Dougherty would have revealed to him the state of affairs. An application by him then in his judgment to the court to restrain the negotiation of the note would have secured him from loss. Kieffer v. Ehler, 18 Pa. 388.

PER CURIAM:

We affirm the decree in this case on the opinion of the learned judge of the court below.

Decree affirmed and appeal dismissed, at the costs of the appellant.